IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH BEDARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 11-215 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.    Introduction**

Plaintiff Joseph Bedard ("Bedard") brings this action pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("Act") [42 U.S.C. §§ 1381-1383f]. For the reasons that follow, the decision of the Commissioner will be vacated, and the case will be remanded to him for further administrative proceedings.

**II.    Procedural History**

Bedard protectively applied for SSI benefits on February 28, 2008, alleging that he had become disabled on February 1, 2008. R. at 102, 131. The Pennsylvania Bureau of Disability Determination ("Bureau") denied the application on June 30, 2008. R. at 70. Bedard responded on September 5, 2008, by filing a request for an administrative hearing. R. at 75-76. On January 15, 2010, a hearing was held before Administrative Law Judge James Bukes (the "ALJ"). R. at 47. Bedard, who was represented by counsel, appeared and testified at the hearing. R. at 49-64.

1

Alina Kurtanich ("Kurtanich"), an impartial vocational expert, also testified at the hearing. R. at 64-66.

In a decision dated March 17, 2010, the ALJ determined that Bedard was not "disabled" within the meaning of the Act. R. at 8-19. On May 13, 2010, Bedard sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. R. at 7. The Appeals Council denied the request for review on December 22, 2010, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. at 1. Bedard commenced this action on February 16, 2011, seeking judicial review of the Commissioner's decision. ECF Nos. 1 & 2. Bedard and the Commissioner filed motions for summary judgment on June 10, 2011, and August 10, 2011, respectively. ECF Nos. 10 & 14. In accordance with 28 U.S.C. § 636(c)(1), the parties have consented to have this matter adjudicated by a United States Magistrate Judge. ECF No. 7. The cross-motions for summary judgment filed by the parties are the subject of this memorandum opinion.

## III. **<u>Standard of Review</u>**

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable

amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted).

Section 105 of the Contract With America Advancement Act of 1996 ("CWAAA") amended the Social Security Act to provide that "an individual shall not be considered to be disabled" thereunder if "alcoholism or drug addiction" would be "a contributing factor material to the Commissioner's determination that the individual is disabled." Pub. L. No. 104-121, § 105; 110 Stat. 847, 852-853 (1996); 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). The Commissioner has promulgated regulations to implement the statutory mandate of the CWAAA. 20 C.F.R. §§ 404.1535, 416.935. Under the applicable regulations, the critical question is

whether a claimant who is disabled as a result of drug or alcohol use would remain disabled if he or she were to stop using those substances. 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). If his or her disability would persist even after a cessation of drug or alcohol abuse, he or she is entitled to an award of benefits. 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii). Conversely, if a claimant's disability would not remain in the absence of continuing drug or alcohol abuse, a finding of "materiality" is warranted, thereby requiring a denial of benefits. 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

### IV. The ALJ's Decision

In his decision, the ALJ determined that Bedard had not engaged in substantial gainful activity subsequent to the date of his application. R. at 13. Bedard was found to be suffering

5

from drug and alcohol addiction, bipolar disorder, bunions, left shoulder impingement disorder, and hepatitis. R. at 13-14. The impairments were deemed to be "severe" within the meaning of 20 C.F.R. §§ 416.920(a)(4)(ii) and 416.920(c). R. at 13-14. The ALJ concluded that these impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments" or, with respect to a single impairment, a "Listed Impairment" or "Listing"). R. at 15-16. In accordance with 20 C.F.R. § 416.945, the ALJ assessed Bedard's residual functional capacity as follows:

> After careful consideration of the entire record, I find that, absent drug and alcohol abuse, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) involving: a sit/stand option, simple instructions, and lifting up to 10 pounds with the left (non-dominant) arm, and avoiding: crowds or groups of people, anything more than simple decision-making, assembly line pace, direct interaction with the general public, and close interaction with co-workers.

R. at 16. The ALJ further determined that, "[w]ith continued drug and alcohol abuse," Bedard would "decompensate" and leave his work station twice per week. R. at 16.

Bedard had "past relevant work"[1] experience as a laborer. R. at 17, 64. Kurtanich classified that position as an "unskilled"[2] job at the "heavy"[3] level of exertion. R. at 64. Since

---

[1] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. § 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 416.971-416.976.

[2] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, [the Commissioner] consider[s] jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. § 416.968(a).

[3] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. § 416.967(d).

6

Bedard was found to be capable of performing only a limited range of "light"[4] work activities, it was determined that he could not return to his past relevant work. R. at 17.

Bedard was born on December 20, 1958, making him forty-nine years old on the date of his application. R. at 51. At that time, he was classified as a "younger person" under the Commissioner's regulations.[5] 20 C.F.R. § 416.963(c). He became a "person closely approaching advanced age" on December 20, 2008, when he reached the age of fifty. 20 C.F.R. § 416.963(d). He had a high school education and an ability to communicate in English. R. at 51-52; 20 C.F.R. § 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Bedard could work as a marker, a garment sorter, or an electronic worker when he was not actively abusing drugs or alcohol. R. at 18. Kurtanich's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 1382c(a)(3)(B).[6] R. at 65.

Kurtanich testified that no work existed in significant numbers in the national economy for an individual who would decompensate and leave his or her work station twice per week. R. at 66. Since the ALJ determined that periods of decompensation would occur only if Bedard continued to use drugs or alcohol, Bedard's use of such substances was found to be "material" to the issue of disability. R. at 19. Consequently, his claim for SSI benefits was denied pursuant to § 105 of the CWAAA. R. at 19.

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b).

[5] The Commissioner's regulations expressly recognize that "younger persons" between the ages of forty-five and forty-nine are "more limited in their ability to adjust to other work" than are persons who have not yet reached the age of forty-five. 20 C.F.R. § 416.963(c).

[6] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

V.      **<u>Discussion</u>**

Bedard advances two arguments in support of his motion for summary judgment. First, he contends that the ALJ erred in failing to find his alleged "paranoid schizophrenia" to be a "severe" impairment. ECF No. 11 at 10-13. Second, he maintains that the record is devoid of evidentiary support for the ALJ's finding of materiality. *Id.* at 13-15. These issues will be addressed in sequential order.

Larry Gitelman ("Gitelman"), a certified registered nurse practitioner, evaluated Bedard on December 7, 2009. R. at 600-602. The evaluation left Gitelman with the impression that Bedard was suffering from chronic paranoid schizophrenia. R. at 601. Allana Sleeth ("Sleeth"), a partial hospitalization therapist, reported on January 8, 2010, that Bedard's "primary diagnosis" was paranoid schizophrenia. R. at 596. In the boldface portion of his opinion stating his finding at the second step of the sequential evaluation process, the ALJ did not list paranoid schizophrenia among Bedard's "severe" impairments. R. at 13. Bedard argues that the ALJ committed reversible error by failing to recognize paranoid schizophrenia as a "severe" impairment. ECF No. 11 at 10-13.

As an initial matter, only evidence supplied by an "acceptable medical source" can establish the existence of a medically determinable impairment. 20 C.F.R. § 416.913(a). Gitelman and Sleeth are not "acceptable medical sources" under the Commissioner's regulations. *Id.* Instead, they are "[m]edical sources" whose opinions can be relied upon for the purpose of determining the severity of an established impairment. 20 C.F.R. § 416.913(d)(1). Since Bedard's paranoid schizophrenia was not specifically diagnosed by an "acceptable medical

8

source," there is considerable force to the Commissioner's argument that the ALJ was not specifically required to treat that condition as an established impairment.[7] ECF No. 15 at 10.

Despite Bedard's contention that the ALJ ignored his paranoid schizophrenia, a careful reading of the ALJ's opinion reveals that this impairment was given some consideration. The ALJ specifically referenced "paranoid schizophrenia" in the portion of his opinion discussing the medical evidence submitted by Gitelman and Sleeth. R. at 14. Furthermore, the ALJ evaluated Bedard's mental impairments under Listing 12.03, which describes the criteria for determining whether a claimant's paranoid schizophrenia is *per se* disabling at the third step of the sequential evaluation process. R. at 15; 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.03. As far as the Court can tell, the ALJ's failure to list paranoid schizophrenia as one of Bedard's "severe" impairments at the second step may have resulted from an oversight or drafting error rather than from an explicit or implicit finding of non-severity.

The second step of the sequential evaluation process has been characterized by the United States Court of Appeals for the Third Circuit as "a *de minimis* screening device" designed to expeditiously "dispose of groundless claims." *Newell v. Commissioner of Social Security*, 347 F.3d 541, 546 (3d Cir. 2003). For this reason, the invocation of the second step *as a basis for the denial of benefits* is "certain to raise a judicial eyebrow." *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 361 (3d Cir. 2004). In this case, however, Bedard's application for SSI benefits was not *denied* at the second step. Other "severe" impairments were found, and his claim proceeded to the remaining steps of the analysis. R. at 13-19. Under the Commissioner's regulations, a residual functional capacity assessment must account for limitations resulting from

---

[7] In a letter to Bedard's counsel dated May 13, 2010, Dr. Nadeem Ahmed described "Chronic Paranoid Schizophrenia" as Bedard's "primary diagnosis." R. at 101. The letter was submitted to the Appeals Council in connection with Bedard's request for review. R. at 100. Since the letter was never presented to the ALJ, it cannot be considered for the purpose of determining whether the Commissioner's "final decision" (*i.e.*, the ALJ's decision) is "supported by substantial evidence." *Matthews v. Apfel*, 239 F.3d 589, 591-595 (3d Cir. 2001).

9

a claimant's "non-severe" impairments in addition to those resulting from his or her "severe" impairments. 20 C.F.R. § 416.945(a)(2). Because Bedard's other impairments advanced his claim beyond the second step, any erroneous finding of non-severity concerning his paranoid schizophrenia was harmless. *Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987).

Bedard's second argument concerns the ALJ's finding of materiality. Kurtanich testified at the hearing that an individual who decompensated and left his or her work station twice per week would not be able to maintain a full-time job existing in significant numbers in the national economy. R. at 65-66. The ALJ concluded that Bedard had such a limitation only when he was actively abusing drugs or alcohol. R. at 16. Consequently, Bedard's consumption of drugs and alcohol was deemed to be "material to the issue of disability." R. at 19.

Since a claimant has direct access to his or her own medical records, the onus is on him or her to submit such records to the Commissioner in order to facilitate a determination as to materiality. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007); *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999). The Commissioner, however, remains responsible for ensuring that the administrative record is fully and fairly developed. *Brueggemann v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003). A finding of materiality must be based on some form of medical evidence. *Sklenar v. Barnhart*, 195 F.Supp.2d 696, 700 (W.D.Pa. 2002). "Where the effects of a claimant's underlying mental impairments cannot be separated from the effects of his or her substance abuse, a finding of materiality is not warranted." *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 431 (W.D.Pa. 2010). In other words, an otherwise "disabled" individual should receive an award of benefits if his or her

mental impairments "cannot be separated from the effects of substance abuse." *Salazar v. Barnhart*, 468 F.3d 615, 623 (10th Cir. 2006).

In his decision, the ALJ did not point to medical evidence which suggested that Bedard would suffer episodes of decompensation only while abusing drugs or alcohol. R. at 16-17. Instead, the ALJ stated that he found Bedard's "drug and alcohol addiction" to be "*potentially* material to the issue of disability" because it was "integral" to Bedard's mental impairments. R. at 14 (emphasis added). This assumption of *potential* materiality does not constitute "substantial evidence" of *actual* materiality. *Brueggemann*, 348 F.3d at 695 ("Even though the task is difficult, the ALJ must develop a full and fair record and support his conclusion with substantial evidence on this point just as he would on any other."). The Court acknowledges that medical evidence supporting a finding of materiality need not come in the form of an expert opinion. *McGill v. Commissioner of Social Security*, 288 Fed.Appx. 50, 53 (3d Cir. 2008)(unpublished). Nevertheless, a denial of benefits grounded in § 105 of the CWAAA "must be supported by at least some medical evidence." *Sklenar*, 195 F.Supp.2d at 700. The ALJ's conclusory opinion in this case fails to satisfy even that deferential standard.

Instead of relying on medical evidence of materiality, the ALJ appears to have based his ultimate determination on a generalized conclusion that Bedard was not credible. R. at 16-17. In June 2008, the Bureau scheduled Bedard for two consultative psychological examinations and one consultative physical examination. R. at 142-157. Bedard never appeared for these examinations. R. at 407-409. If a claimant fails or refuses to undergo a consultative medical examination, his or her application for benefits can be denied for that reason alone. 20 C.F.R. § 416.918(a); *Boyd v. Schweiker*, 525 F.Supp. 123, 127 (E.D.N.C. 1981). A denial of this kind, however, is proper only where the record indicates that the claimant did not have "good reasons"

for failing to appear. 20 C.F.R. § 416.918(b). An administrative law judge who opts to deny a claimant's application based on a failure to attend a scheduled consultative examination must specifically determine whether the claimant had "good reasons" for such a failure. *McLean v. Astrue*, 650 F.Supp.2d 223, 228 (E.D.N.Y. 2009); *Bousquet v. Apfel*, 118 F.Supp.2d 1049, 1055 (C.D.Cal. 2000). The Commissioner's regulations specifically recognize that this determination must account for a claimant's "physical, mental, educational, and linguistic limitations." 20 C.F.R. § 416.918(a). In some instances, a claimant's failure to attend a consultative medical examination may be directly attributable to his or her mental condition. *Bousquet*, 118 F.Supp.2d at 1055-1056. Consequently, a denial of benefits based on a claimant's failure to appear is ordinarily justified only where the record suggests that he or she has consciously obstructed or resisted the examination process. *Kreidler v. Barnhart*, 385 F.Supp.2d 1034, 1037-1038 (C.D.Cal. 2005); *Pearce v. Secretary of Health & Human Services*, 680 F.Supp. 1264, 1266-1268 (C.D.Ill. 1988).

When asked to verify his mailing address at the hearing, Bedard testified that he had lived at that address since April 2009. R. at 50. He stated that he had previously been homeless. R. at 50. The three consultative examinations were scheduled for June 2008. R. at 142-157. It is not clear from the record whether Bedard was homeless at that time. If Bedard did not receive notice of the scheduled examinations, he had a "good reason" for failing to appear. 20 C.F.R. § 416.918(b)(2). This issue was never explored by the ALJ. Moreover, the ALJ never articulated findings as to whether Bedard's failure to attend the consultative examinations was attributable to his mental impairments.

The ALJ observed that Bedard was "very non-compliant with treatment," that he often missed appointments with his treating healthcare providers, and that he was "frequently on no

12

medication at all." R. at 17. A claimant's failure to follow his or her prescribed treatment regimen can result in a denial of his or her application for SSI benefits. 20 C.F.R. § 416.930(b). It is worth noting, however, that a mental patient's failure to adhere to the recommendations of his or her healthcare providers can sometimes be a symptom of his or her mental illness. *Pate-Fires v. Astrue*, 564 F.3d 935, 945-946 (8th Cir. 2009). An individual who suffers from a mental impairment "may not have the same capacity to assess the risks and benefits of prescribed treatment as someone who is not affected by such an impairment." *Sharp v. Bowen*, 705 F.Supp. 1111, 1124 (W.D.Pa. 1989). For this reason, the determination as to whether a claimant has an "acceptable reason" for failing to follow his or her prescribed treatment regimen must account for his or her "physical, mental, educational, and linguistic limitations." 20 C.F.R. § 416.930(c). In this respect, a claimant's failure to seek appropriate treatment may sometimes weigh in favor, rather than against, an award of benefits. The ALJ should have addressed this issue in determining whether Bedard's subjective complaints were credible.

Because the ALJ did not buttress his finding of materiality with probative medical evidence, his decision is not "supported by substantial evidence." 42 U.S.C. § 405(g). The proper remedy in this situation is a remand for further proceedings rather than an award of benefits. *Ambrosini*, 727 F.Supp.2d at 432 (remanding a case for further proceedings because the record contained no opinion evidence as to whether the claimant's substance abuse was "material" to his "mental health issues"). The record in this case is not fully developed. It is not clear whether Bedard had a justifiable reason for missing his scheduled consultative examinations, or whether his failure to seek more aggressive treatment was indicative of a disabling mental impairment. These issues should be addressed by the Commissioner in the first instance.

13

Bedard must be afforded "an opportunity to be heard" on remand. *Thomas v. Commissioner of Social Security*, 625 F.3d 798, 801 (3d Cir. 2010). In a letter to Bedard's counsel dated May 13, 2010, Dr. Nadeem Ahmed stated that Bedard's "symptoms of delusions, visual and auditory hallucinations, extreme irritability, anger management problems, interpersonal skill deficits, communication impairment, sleep disturbance, mood liability, and concentration impairment ma[d]e his ability to obtain and continue with gainful employment in either a part-time or a full-time capacity impossible." R. at 101. The letter was submitted to the Appeals Council in connection with Bedard's request for review. R. at 100. Since Dr. Ahmed's letter was never before the ALJ, it was not considered for the purpose of determining whether "substantial evidence" supported the ALJ's decision. *Matthews v. Apfel*, 239 F.3d 589, 591-595 (3d Cir. 2001). Nonetheless, the Commissioner must be sure to consider Dr. Ahmed's opinion during the course of the upcoming administrative proceedings. *Reefer v. Barnhart*, 326 F.3d 376, 380-381 (3d Cir. 2003). Consideration must also be given to any additional evidence submitted by Bedard in support of his application.

## VI. Conclusion

The Commissioner's motion for summary judgment (*ECF No. 14*) will be denied, and Bedard's motion for summary judgment (*ECF No. 10*) will be denied insofar as it requests an award of benefits but granted to the extent that it seeks a vacation of the Commissioner's final decision, and a remand for further administrative proceedings. The Commissioner's decision will be vacated, and the case will be remanded to him for further consideration of Bedard's application for SSI benefits.

February 3, 2012                                                         s/Lisa Pupo Lenihan
Date                                                                             LISA PUPO LENIHAN
                                                                                  Chief United States Magistrate Judge

cc: All counsel of record